

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

June 6, 1990

Honorable Brad Wright
Chairman
Committee on Public Health
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Honorable George Pierce
Chairman
Committee on Urban Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78768-2910

Opinion No. JM-1182

Re:  Use of four-way stop
signs    by    governmental
bodies  to   control   "cut-
through" traffic in resi-
dential neighborhoods
(RQ-2008)

Dear Representatives Wright and Pierce:

You ask the following questions:

> Does the State Department of Highways  and
> Public  Transportation's  'Texas  Manual   On
> Uniform Traffic Control  Devices For  Streets
> And Highways'  forbid  the use  of  multi-way
> stop signs in a typical 'cut-through'  situa-
> tion?

> If the  manual  does  forbid  the  use  of
> multi-way  stop  signs  except  in  the   few
> specified  conditions  mentioned  in  Section
> 2B-6, does state law forbid local authorities
> from  authorizing  multi-way  stop  signs  to
> control the typical 'cut-through' situation?

We assume that the "typical cut-through situation"  you
refer to in your questions  is illustrated by the  following
background information you have furnished us.

> Many  neighborhoods  in  Texas  suffer   from
> 'cut-through'   traffic.     Motorists    cause
> 'cut-through' traffic when they try to   avoid
> traffic lights  (or  traffic  congestion)  on
> major  throughfares   by  'cutting   through'

adjacent residential neighborhoods, using minor residential streets neither designed nor intended to be traffic arteries. Often, such heavy use causes safety hazards (especially when children are present), and it can cause unwarranted noise and disruption in otherwise quiet residential neighborhoods. 'Cut-through' traffic in a residential neighborhood can significantly detract from the quality of life there.

Local traffic officials have very few options to control 'cut-through' traffic. Because street patterns are almost always fixed by recorded plat or dedication, it is usually futile to try re-route or to redesign the streets themselves. Sometimes turn restrictions or 'one-way' restrictions will discourage 'cut-through' traffic, but these restrictions can cause problems of their own in a residential neighborhood.

Local traffic officials may have no practical way to discourage 'cut-throughs' except by erecting four-way or three-way stop signs on the affected residential streets.

Section 31 of article 6701d, V.T.C.S., addresses the matter of local authorities placing and maintaining traffic control devises upon any highway under their jurisdiction. Section 31 provides:

Local authorities, in their respective jurisdiction, may place and maintain any traffic-control devices upon any highway under their jurisdiction as they may deem necessary to indicate and carry out the provisions of this Act, or local traffic ordinances, or regulate, warn or guide traffic. <u>All such traffic-control devices hereafter erected shall conform to the State Highway Department's[1] manual and specifications</u>. (Emphasis added.)

---

1. "State Highway Department" changed to "State
(Footnote Continued)

Section 29 of article 6701d authorizes the State Highway Department to adopt a manual and specifications for a uniform system of traffic control devices. Section 29 provides:

> The State Highway Commission[2] shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this Act for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.

"Street or highway" is defined in section 13(a) of article 6701d as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."

Part 1 of the department's Texas Manual on Uniform Traffic Control Devices deals with "general provisions" of the manual. We believe its sections 1A-4 and 1A-5 are instructive in understanding the meaning of those sections that address the matter of installation of multi-way stop signs.

Section 1A-4 concerns the matter of an engineering study prior to making a decision to use a particular device at a location. Section 1A-4 states:

> The decision to use a particular device at a particular location <u>should be made on the basis of an engineering study</u> of the location. Thus, while this Manual provides standards for design and application of traffic control devices, <u>the Manual is not a substitute for engineering judgment. It is</u>

---

(Footnote Continued)
Department of Highways and Public Transportation." V.T.C.S. art. 6663.

2. "State Highway Commission" changed to "State Highway and Public Transportation Commission." V.T.C.S. art. 6663.

> the intent that the provisions of this Manual
> be standards for traffic control devices
> installation, but not a legal requirement for
> installation.
>
> Qualified engineers are needed to exercise
> the engineering judgment inherent in the
> selection of traffic control devices, just as
> they are needed to locate and design the
> roads and streets which the devices
> complement. Jurisdictions with responsibil-
> ity for traffic control, that do not have
> qualified engineers on their staffs, should
> seek assistance from the State highway
> department, their county, a nearby large
> city, or a traffic consultant. (Emphasis
> added.)

Section 1A-5 addresses the meaning of "shall,"
"should," and "may" as they are used in the manual,
providing:

> In the Manual sections dealing with the
> design and application of traffic control
> devices, the words "shall," "should" and
> "may" are used to describe specific
> conditions concerning these devices. To
> clarify the meanings intended in this Manual
> by the use of these words, the following
> definitions apply:
>
> 1. SHALL -- A mandatory condition. Where
> certain requirements in the design or
> application of the device are described with
> the 'shall' stipulation, it is mandatory when
> an installation is made that these require-
> ments be met.
>
> 2. SHOULD -- An advisory condition.
> Where the word 'should' is used, it is
> considered to be advisable usage, recommended
> but not mandatory.
>
> 3. MAY -- A permissive condition. No
> requirement for design or application is
> intended.

The manual describes traffic conditions which may or
should justify a multi-way stop sign installation in section

2B-6 and in Appendix B of the manual entitled "Alternate Warrant for Multi-way Stop Control Using Volume and Delay."

We believe that the traffic conditions detailed in section 2B-6 and Appendix B are intended as guidelines for use of local authorities in making a determination of whether to erect multi-way stop signs. The manual expressly states that they are not a requirement for installation. We note that section 2B-6 does emphasize the importance of the use of qualified engineers in the selection of sites and erections of such signs.

In the event a determination is made to install multi-way stop signs, section 2B-4 of the manual prescribes the dimensions, shape, color, placement, and use of devices and supplementary plates that <u>shall</u> be used. Section 31 of article 6701d requires that all "traffic-control devices hereafter erected shall conform to the State Highway Department's manual and specifications."

In response to your first question, we believe that the existence of traffic conditions described in section 2B-6 and Appendix B of the manual are not a prerequisite to the erection of multi-way stop signs or devices by local authorities. However, should a determination be made to install such signs or devices they must conform to the dimensions, shape, color, and placement required by section 2B-4 of the manual.

Your second question asks whether state law forbids local authorities from authorizing multi-way stop signs other than may be detailed in the department manual.

Subsection (b) of section 27 of article 6701d prohibits the erection of stop signs by local authorities under certain conditions. Subsection (b) states:

> No local authority shall erect or maintain any stop sign or yield sign or traffic-control device at any location so as to require the traffic on any State highway, including Farm-to-Market or Ranch-to-Market roads, to stop or yield before entering or crossing any intersecting highway unless such signs or devices are erected and maintained by virtue of an agreement entered into between such local authority and the State Highway Department under the provisions of Senate

Bill No. 415, Acts of the 46th Legislature,
Regular Session. [V.T.C.S. art. 6673b.][3]

Subsection (b) of section 27 of article 6701d expressly prohibits the erection of stop signs at any location so as to require traffic to stop before entering or crossing a state highway unless there has been an agreement with the State Highway Department pursuant to article 6673b.

## S U M M A R Y

Section 31 of article 6701d, V.T.C.S., and the Texas Manual on Uniform Traffic Control Devices for Streets and Highways do not prohibit local authorities from erecting multi-way stop signs at intersections. The manual contains suggested guidelines in determining whether such signals should be installed and emphasizes the necessity of engineering judgment in arriving at a decision. In the event stop signs are installed, the signs must conform to the requirements of section 2B-4 of the manual as to dimensions, shape, color, placement, and under what conditions supplementary plates

---

3.   Article 6673b provides:

The [State Highway and Public Transportation Commission] is hereby authorized and empowered, in its discretion, to enter into contracts or agreements with the governing bodies of incorporated cities, towns, and villages, whether incorporated under the home rule provisions of the Constitution, Special Charter, or under the General Laws, providing for the location, relocation, construction, reconstruction, maintenance, control, supervision, and regulation of designated State highways within or through the corporate limits of such incorporated cities, towns, and villages, and determining and fixing the respective liabilities or responsibilities of the parties resulting therefrom; and such incorporated cities, towns, and villages are hereby authorized and empowered, through the governing bodies of such cities, towns, and villages to enter into such contracts or agreements with the [State Highway and Public Transportation Commission].

shall be used. Subsection (b) of section 27 of article 6701d, V.T.C.S., prohibits the erection of a stop sign at any location so as to require the traffic on any state highway, including farm-to-market or ranch-to-market roads, to stop before entering or crossing any intersecting highway unless such devices are erected and maintained pursuant to an agreement entered into between the local authorities and the State Highway and Public Transportation Commission pursuant to article 6673b, V.T.C.S.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General